## SURE SEAL CO. v. LOEBER et al.

(Supreme Court, Appellate Division, First Department. February 11, 1916.)

1. SALES ☞52—MISREPRESENTATIONS BY SELLER—SUFFICIENCY OF EVIDENCE.
   In an action for the balance of account due for goods sold and delivered, evidence *held* sufficient to show that plaintiff's representations as to the goods applied only to those first ordered as a trial order.
   [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 118–144, 1045; Dec. Dig. ☞52.]

2. SALES ☞273—MANUFACTURER'S WARRANTY—STATUTE.
   Under Personal Property Law (Consol. Laws, c. 41) § 96, subd. 4, as added by Laws 1911, c. 571, touching the matter of implied warranties of quality of goods sold, there is no implied manufacturer's warranty as to the fitness of goods for any particular purpose, when ordered by a trade-name.
   [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 772–776; Dec. Dig. ☞273.]

3. SALES ☞273—REMEDIES OF BUYER.
   A buyer of seals for glass packages containing preserves, which, with knowledge that a particular kind of cap was sold by the seller for packages generating pressure, ordered the regular cap, which became loosened when the buyer's improperly prepared preserves fermented and generated pressure, could not escape liability for the caps on the ground they were defective.
   [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 772–776; Dec. Dig. ☞273.]

4. APPEAL AND ERROR ☞1176—DISPOSITION—ENTRY OF JUDGMENT.
   Where plaintiff moves for direction of verdict, as well as the dismissal of defendants' counterclaim, the Appellate Division, upon dismissing the counterclaim, can direct the entry of judgment for plaintiff.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4588–4596; Dec. Dig. ☞1176.]

Appeal from Trial Term, New York County.

Action by the Sure Seal Company against Charles C. Loeber and others, copartners doing business under the firm name and style of Loeber Pickling & Preserving Works. From a judgment for defendants, and an order denying their motion for new trial, plaintiff appeals. Judgment and order reversed, and new trial granted.

Argued before CLARKE, P. J., and SCOTT, DOWLING, SMITH, and PAGE, JJ.

Alfred T. Davison, of New York City (Clarence E. Thornall, of New York City, and James K. Foster, of Brooklyn, on the brief), for appellant.

Benjamin Reass, of Brooklyn, for respondents.

SCOTT, J. The action is for a balance of account due for goods sold and delivered, consisting of what are termed "Sure Cap Seals," used for sealing glass packages containing jams, preserves, and other condiments. The sale, delivery, and agreed price are admitted by the answer. The defendants relied upon two counterclaims, in which it was asserted that they had purchased said seals upon the faith of

certain warranties and representations on the part of plaintiff that said seals would be air-tight and keep the contents of the packages upon which they were used in a healthy, marketable, and merchantable condition, whereas in fact said seals were not air-tight, and in consequence thereof the contents of many packages became spoiled, to defendants' damage. The jury awarded the defendants damages upon the counterclaim.

The plaintiff is the manufacturer of the said "Sure Seal Caps," which it sells under that name, and of which it manufactures several varieties, containing, however, the same general characteristics. Defendants are manufacturers of fruit preserves at Wilmington, Del. It appears that in January, 1912, defendants had on hand some 7,200 jars of preserves which had spoiled in consequence, as it is said, of defects in the caps or seals which they had been using. This fact came to the knowledge of one of plaintiff's salesmen, who advised and induced defendants to recook the spoiled preserves and to pack them in jars sealed with "Sure Seal Caps." Defendants thereupon purchased 7,200 of the caps, which they used to seal up the recooked preserves. It is not claimed that any defect was found in this batch of caps. On April 30, 1912, defendants ordered 300,000 of the same caps to be delivered, as ordered, during the ensuing year. On this order 194,740 caps were delivered and used by defendants in putting up their product. It is alleged that many of these caps were found not to be air-tight, in consequence of which large quantities of the preserves were spoiled, and there is no doubt that many of the caps failed to remain tightly on the jars upon which they were used. The cause of this failure was a sharply contested question of fact on the trial.

[1-3] The representations alleged by defendants are stated to have been made in or about the month of February, 1912; the reference being to the statements and representations made by plaintiff's salesman when he was endeavoring to induce defendants to buy the 7,200 caps. These statements and representations defendants seek to so extend as to apply to the 194,740 caps subsequently sold and delivered, claiming that that sale, as well as the earlier one, was induced and entered upon by defendants in sole reliance upon the salesman's representations. It is quite clear that this construction is unsupported by the evidence. It is doubtless true that plaintiff's salesman would have been glad in February to have sold to defendants, not only the caps required at once, but all that might be required during the year; but defendant Charles Loeber repeatedly and explicitly testifies that the order given in February was a trial order, and that he said to the salesman that he would rather be shown the excellence of the caps than take the salesman's word for it. So that it stands proven by defendants' own testimony that reliance was placed on the salesman's representations only so far as concerned the first order of 7,200 caps, as to which no damages are claimed. Defendants therefore signally failed in the attempt to show that they were induced to buy the 300,-000 caps by actual misrepresentation or express warranty.

Nor can a claim be asserted upon an implied warranty arising from the fact that plaintiff is a manufacturer and knew the purpose for

which the seals were to be used. The goods ordered were known by the trade-name of "Sure Seal Caps," and were ordered by that name. In such a case there is no implied warranty as to the fitness of the goods for any particular purpose. Personal Property Law, § 96, subd. 4, added by Laws 1911, c. 571. Furthermore, the evidence is very convincing that the failure of the caps was due to faulty preparation of the preserves, and not to any defect in the caps themselves. The caps ordered by defendants were those designated on plaintiff's catalogue and price lists as "Regular Caps, size No. 63." Plaintiff's price list, which was sent to defendants before the second order was given and which is referred to in the order, shows that plaintiff manufactured two styles of caps of size 63 known as "Regular" and the other known as "Process." As to the Regular caps the price list stated as follows:

"This cap is used in sealing pickles, preserves, honey, syrup, and other condiments, which do not generate pressure."

And as to the Process caps it stated as follows:

"This cap is designed to be used on all condiments which are processed, or which generate pressure after being sealed."

So also plaintiff's catalogue, which was sent to defendants some time before the 300,000 order was given, stated as follows:

"The Regular cap is for the sealing of pickles, preserves, condiments, paints, varnishes, metal polishes, and such other articles which do not generate pressure. This cap is used with glassware made to the Phœnix standard.

"The Process cap is for the sealing of higher grade goods for foreign shipment and the sterilization of which is desirable; goods which generate pressure or which must be heated after sealing. This cap differs only from the regular in that it is made in two pieces, one of which (the band), must be stripped off in order to open the package. The same glassware is used with this Process cap as with the Regular cap."

Defendants therefore had the choice, when ordering, to select caps proof against pressure, or caps not so proof, and they deliberately chose the latter, doubtless because preserves, if properly prepared, should not ferment and thus generate pressure from within. The evidence, which it is unnecessary to discuss in detail, shows very convincingly that all or nearly all of the caps which became loosened, did so because of pressure from within due to fermentation, and that this resulted from improper preparation of the preserves. There seems to be no escape from the conclusion that defendants deliberately ordered caps which were expressly stated not to be proof against pressure from within, and unsuitable for packing goods in which fermentation might be expected to take place, and then, by negligent or unskillful preparation, filled the jars with preserves which did ferment, and that it was this fermentation which caused the failure of the caps.

In any aspect of the case, therefore, the verdict against the plaintiff was unjustified by the evidence, and the motion to dismiss the counterclaim should have prevailed.

[4] If plaintiff had moved for the direction of a verdict, as well as the dismissal of the counterclaim, we might now dispose of the case by directing the entry of the proper judgment. No such motion was made, however, and we have nothing to review in that regard.

The judgment and order appealed from must be reversed, and a new trial granted, with costs to appellant to abide the event. Order filed. All concur.

