### HOFFMAN et al. v. AMERICAN MILLS CO.

(Circuit Court of Appeals, Second Circuit. March 13, 1923.)

No. 167.

1. **Contracts ⬅176(1)—Construction of written contract is question for court.**
   The construction of written contracts, whether embodied in a single instrument or in written correspondence, is a question of law for the court, and not one of fact for the jury.

2. **Contracts ⬅176(7)—Question of terms of contract partly written and partly oral is for the jury.**
   If the contract is partly written and partly parol, the question of its terms is one for the jury.

3. **Contracts ⬅176(6)—Construction of contract depending on inferences from series of letters and other circumstances is for the jury.**
   Where the case turns upon proper conclusions to be drawn from a series of letters comprising the contract between the parties, taken in connection with other facts and circumstances, the question is one which may properly be left to the jury.

4. **Sales ⬅88, 182(1)—Whether sample was of stated dimensions and goods conformed thereto held jury questions.**
   Where a contract for the sale of goods was embodied in correspondence between the parties, and in one letter the buyer stated he was inclosing therein a sample of the goods furnished by the seller's agent which he understood to be of twine of certain dimensions and quality, it was

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

proper to submit to the jury, in determining whether the goods tendered by the seller conformed to the contract, the question whether the sale was by sample or by description contained in the buyer's letter, and whether the goods conformed to the sample.

5. **Courts** ⬡⟹356—State practice of directing final judgment on verdict followed.
   Where the trial judge did not set aside a verdict for plaintiffs but merely dismissed the complaint, expressly stating his reason to be to permit rendition of the judgment on the verdict if the dismissal of the complaint was erroneous, the Circuit Court of Appeals may follow the practice of Civil Practice Act, N. Y. §§ 495, 584, and render final judgment upon the verdict, which would not be a breach of Const. Amend. 7.

   Hough, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by George F. Hoffman and another, doing business under the firm name and style of the Hoffman-Corr Manufacturing Company, against the American Mills Company, to recover damages for breach of contract for the sale of goods to defendant. The complaint was dismissed after verdict was rendered for plaintiffs, and plaintiffs bring error. Reversed, with directions to enter judgment on the verdict.

John B. Doyle, of New York City (Harrison Clark, of New York City, of counsel), for plaintiffs in error.

Henry Uttal, of New York City, for defendant in error.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. We shall refer to the parties as below.

Below, this case was tried and the questions of fact submitted to the jury, the court reserving the motion to dismiss the complaint. After the rendition of the verdict, it was not set aside, but the complaint was dismissed. The court stated in his opinion that he knew of no reason which should compel the setting aside of the verdict, and that, if he was wrong, the appellate court might direct that judgment be entered on the verdict and thus avoid a new trial. The case was here before (American Mills Co. v. Hoffman, etc., 275 Fed. 285), and was reversed for error in allowing the plaintiffs to amend their complaint upon the trial to the prejudice of the defendant and for the commission of errors in the cross-examination of the defendant's witnesses.

Thereafter amended pleadings were served. The amended complaint alleges the making of an agreement by which the defendant agreed to purchase "25,000 pounds of No. 1200 Thrush brown paper twine, as per sample, put up on five-pound fiber spools, at 30 cents per pound, f. o. b. New York City, payment net thirty days from delivery, or less two per cent. discount, if payment thereof were made within ten days from the date of delivery; delivery to be made within a reasonable time after the date of said agreement." It alleges that the plaintiffs were ready, willing, and able to perform, and on December 13, 1918, delivered to the defendant 2,677 pounds and before delivery of any of the balance, on January 2, 1919, the defendants repudiated the contract

and notified the plaintiffs it would accept no more deliveries. The goods could not be readily resold at a reasonable price, so it is alleged, and the plaintiffs offered to deliver the balance, which was refused, and it was thereafter stored and held by them for the defendant's account and as its bailees. The goods so stored amounted to 2,566 pounds of twine as per sample, put upon five-pound fiber spools, all said to be in compliance with the contract and the agreed price of $7,519.81, for which judgment was demanded. The making of the agreement to purchase was admitted by the answer, but it was denied that the amended complaint correctly stated the terms of the agreement, and it was said that the sale was of paper twine of the width of nine-sixteenths to three-eighths of an inch and of a basis weight of 20 to 25 pounds, upon the sample exhibited by the plaintiffs of certain description or specifications to which the plaintiffs warranted the merchandise delivered, would be equal in all respects, and that they broke this agreement by delivering merchandise which did not correspond with the sample and description and warranty, and that because of this it was rejected by the defendant.

The plaintiffs' place of business is in New York City, and the defendant's in Atlanta, Ga. The plaintiffs' agent in October, 1918, solicited a sale of twine of the defendant at Atlanta, and submitted to the defendant's purchasing agent a sample ball of twine. This has been referred to as the "Thrush Brand" twine. A sample piece was taken from this ball by the purchasing agent and returned to the plaintiffs, and after some further negotiations, a purchase order was sent by the defendant to the plaintiffs on October 11, 1918. This order provided for "25,000 pounds No. 1200 Thrush brown paper twine, as per sample, put up on five-pound fiber spools, at 30 cents per pound." The order contained the provision that it expressed the entire contract between the parties and the cancellation clause which is favorable to the buyer. Objections were made by the plaintiffs on October 19, 1918, and they asked to have stricken from the order the cancellation clause to which, on October 22, 1918, the defendant's agent replied as follows:

"Hoffman-Corr Mfg. Co., 594 Broadway, New York, N. Y.—Gentlemen: Mr. Florence has shown us your letter addressed to him under date of October 19th, having reference to our order for 25,000 pounds of the brown paper twine.

"However, be advised that the sample which you advised was being inclosed was not inclosed.

"In consequence of which we attach hereto a small sample of the twine submitted by your Mr. Florence representing the No. 1200 Thrush twine, or brown paper twine, and against which we placed our order.

"This you will notice is a very small twine made of paper of a width of probably $9/16$ to $3/8$ inch in a basis weight of about 20 to 25 pounds.

"If for any reason your understanding varies from this do not fail to advise us immediately.

"We also note the exceptance you take in several of the terms mentioned in our order, that is order being subject to cancellation for cause beyond the buyer's control, etc., and would say that it is agreeable to us for you to eliminate these conditions on the order in question.

"Do not fail to advise us relative to the inclosed sample immediately and oblige,

                "Yours very truly,                    American Mills Company."
PTJ/EF

                            ."At Your Service"

A sample of the twine was inclosed in this letter to which was attached the tag reading as follows:

"Sample submitted by Mr. Florence as representing No. 1200 Thrush twine."

Thereafter, on the 25th of October, 1918, the plaintiffs acknowledged receipt of the order and replied as follows:

"American Mills Co., Atlanta, Ga.—Gentlemen: We are in receipt of your favor of the 22d instant relative to your order for 25,000 lbs. of brown paper twine. We note that No. 1200 is what is desired. We shall, therefore, proceed with the order, with the understanding that, as per your agreement in said letter of the 22d, clauses we mentioned in our previous letter shall be eliminated. We are going to ship No. 1200 Thrush brand twine, eliminating the clauses in question, and thank you for your order.
"[Signed]　Hoffman-Corr Mfg. Co."

Later, on October 28, 1918, the plaintiffs wrote the defendant stating as follows:

"American Mills Co., Atlanta, Ga.—Gentlemen: We beg to acknowledge receipt of your order dated October 11th, No. S-188, calling for 25,000 lbs. of No. 1200 Thrush brand twine, as per sample, put up on 5 lb. fiber spools at 30c per lb., f. o. b. New York City, less 2 per cent. ten days, net thirty. Your order states that you will advise us shipping instructions after knowing point of shipment. These goods will be shipped from New York City. We therefore would request that you advise us immediately shipping instructions.
"Very truly yours,　　　　　　　Hoffman-Corr Mf'g Co.,
"EZ:M　　　　　　　　　　　　　by Edward A. Zabriskie."

To which the defendant replied on the 1st of November acknowledging the letter of October 28th and advising that the goods were to be delivered to the Harris Warehouse, South street, New York City. It is the claim of the plaintiffs that this correspondence, together with the sample of twine, constitutes the contract. Thereafter, the plaintiffs placed this order with their source of supply, the Cleveland-Akron Bag Company, and one of the plaintiffs testified as follows:

"Q. And did you see any of the goods when they came forward? A. Yes, sir.
"Q. When, for the first time, did you see any of them, if you recall? A. No, I cannot recall the exact date when they came in. I went out and examined some of the cases in our shipping room.
"Q. And were any of them opened? A. Yes, sir.
"Q. What did you do with regard to comparing the goods that came through from Cleveland? A. Compared them with spools that I had in the office at the time, and they were the same goods.
"Q. And you compared them with this sample, did you? A. Yes.
"Q. And what, if any, difference did you note between the two? A. There was no difference.
"Q. Was it the same as this sample? A. Yes.
"Q. Which has been marked in evidence here 'Exhibit No. 9'? A. Positively."

Exhibit 9 was the sample sent forward by the defendant to the plaintiffs in the letter of October 22d. This witness testified further that the goods were billed to the defendant and shipped to the Harris Warehouse, New York City. He further testified that after the goods were all shipped to this warehouse, he saw them at the warehouse accompanied by the attorney for the defendant. They were then examined and were found to be the same as the sample.

"Q. In other words, that the goods as actually delivered in the Harris Warehouse were the same as this sample? A. Yes, sir."

[1-3] It thus appears that there was a tender by the plaintiffs to the defendant of the requested quantity of the goods, and delivery was within the time. The court submitted to the jury the question of whether the sale was by sample or sample and description, and thus permitted the jury to pass upon the contract between the parties. In the opinion filed, the reason for dismissing the complaint is said to be that in so submitting the question as one of fact for the jury, error was committed. From the evidence in the record, there was presented the question of whether the sample of the twine marked "Exhibit 9" went forward in the defendant's letter of October 22, 1918, and whether the parties contracted with reference to this sample. It is settled that the construction of written contracts whether embodied in a single instrument or in written correspondence, is a question of law for the court and not one of fact for the jury. Hamilton v. Liverpool Co., 136 U. S. 242, 10 Sup. Ct. 945, 34 L. Ed. 419. Where the entire contract is found in the correspondence between the parties, the trial judge must construe the same; but if it is partly written and partly parol, the question of its terms is for the jury. U. S. Steel Products Co. v. Poole-Dean Co., 245 Fed. 533, 157 C. C. A. 645. While this is a general rule, it is likewise true that where the case turns upon proper conclusions to be drawn from a series of letters taken in connection with other facts and circumstances, it is one which may properly be left to the jury. The rule is stated in West v. Smith, 101 U. S. 263, 25 L. Ed. 809:

"Doubtless the general rule is that it is the province of the court to construe written instruments, but it is equally well settled that where the effect of the instrument depends not merely on its construction and meaning, but upon collateral facts and extrinsic circumstances, the inferences of fact to be drawn from the paper must be left to the jury; or, in other words, where the effect of a written instrument, collaterally introduced in evidence depends not merely on its construction and meaning, but also upon extrinsic facts and circumstances, the inferences to be drawn from it are inferences of fact and not of law, and of course are open to explanation."

See, also, Rankin v. Fidelity, etc., Co., 189 U. S. 243, 23 Sup. Ct. 553, 47 L. Ed. 792.

The rule in New York state in Henry v. Talcott, 175 N. Y. 385, 67 N. E. 617, was stated as follows:

"We think a question of fact arose for the jury to decide upon all the evidence, whether the parties intended a sale by sample or a sale by description. While there was no conflict in the evidence, the facts proved permitted different inferences, and hence action by the jury was required, which was the case in Smith v. Coe, 170 N. Y. 162, 171, cited by the respondent. The primary question is: What did the parties intend? For there was no sale by sample unless the parties so intended. The intention is to be gathered from the order, the confirmation thereof and the circumstances surrounding the parties at the time the contract was made."

[4] We think there is no conflict between the rule prevailing under the federal authorities and that of the state. There is the collateral fact in the case at bar—the sending of the sample and its introduction

in evidence as Exhibit No. 9. Since it was claimed, by way of defense, that the plaintiffs exhibited to the defendant a sample of twine of certain dimensions and weight, it became a question for the jury to say whether, in making the agreement, the plaintiffs simply exhibited and had in hand the sample of twine of a certain trade-name without reference to any dimensions. Whether it was a fact that the goods shipped came up to the sample which was sent was also a question of fact.

There was the further question presented, which was considered by the court below, of whether or not the order meant the twine described in the letter of October 22, 1918, "as a very small twine made of paper of a width of probably $9/16$ to $3/8$ inch in a basis weight of about 20 to 25 pounds," or whether it was the twine described by the trade-name used by the plaintiffs as "No. 1200 Thrush brown twine." Davis Co. v. Mallory, 137 Fed. 332, 69 C. C. A. 662, 69 L. R. A. 973; Sure Seal Co. v. Loeber, 171 App. Div. 225, 157 N. Y. Supp. 327.

The court, with appropriate instructions, left it for the jury to say what twine was inclosed in defendant's letter and to consider the bearing of the purchasing agent's testimony that the weight and measure of the twine given was mismeasured and misjudged as to weight and that the agent was mistaken. He also left to the jury to consider what was intended by the use of the words "No. 1200 Thrush twine" or "brown paper twine"; whether the purchasing agent intended that the language of attempted description of the sample was a binding description of the weight and width of the goods to be shipped, or whether the defendant was concerned merely with the sample and was contracting with reference to the sample. The sample was a physical fact, extraneous to the documentary evidence, and this we think made out a jury question to say whether the sample was inclosed, and, if so, it was a sale by sample, and the parties must be held to have contracted with reference to it. The finding of the jury against the defendant is consistent with the plaintiffs' theory and has support in reason and in the evidence.

[5] Believing that it was error to dismiss the complaint, we may follow the practice in the state courts and direct final judgment upon the verdict. Dochtermann Van & Express Co. v. Fiss, Doerr & Carroll Horse Co., 155 App. Div. 162, 140 N. Y. Supp. 72; Civil Practice Act, § 495 (Code Civ. Proc. § 1234); Civil Practice Act, § 584 (Code Civ. Proc. § 1317).

There have been two trials, and the verdict has been for the plaintiffs in each. The court did not set aside the verdict, but let it stand so that it might be reinstated in the event that this court held it to be error to order a nonsuit. We think it would not be a breach of the Seventh amendment of the federal Constitution to order the verdict reinstated. In Slocum v. New York Life Ins. Co., 228 U. S. 364, 33 Sup. Ct. 523, 57 L. Ed. 879, Ann. Cas. 1914D, 1029, the verdict was set aside and judgment directed, dismissing the complaint. This was held to be in violation of the Seventh Amendment. But in the case at bar, the court expressly refused to set aside the verdict. The right of jury trial was therefore accorded the defendant and our determination here in no wise re-examines the facts tried by the jury.

The judgment is reversed, with directions to the District Court to enter a judgment on the verdict.

HOUGH, Circuit Judge (dissenting). With Judge Learned Hand in the court below, this case "seems to me to involve only the meaning to be put upon the ordinary and unambiguous language of the four papers making up the contract."

The only matter or thing other than these four papers for the consideration of the court is the sample, and about the actual character thereof there was no dispute at all. Therefore decision was for the court, and that decision was properly given for defendant for the reasons given by Judge Hand.