**NICKEL et al. v. POLLIA et al.**

No. 3895.

United States Court of Appeals
Tenth Circuit.

Jan. 3, 1950.

John S. Miller, Asst. U. S. Atty., Cheyenne, Wyo. (John C. Pickett, U. S. Atty., Cheyenne, Wyo., was with him on the brief), for appellants.

Carleton A. Lathrop, Cheyenne, Wyo., for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

Andrew A. Pollia and six use plaintiffs brought this action in the United States District Court for the District of Wyoming, against E. C. Nickel, the base contractor, herein referred to as the contractor, and the Federal Public Housing Authority, herein referred to as F.P.H.A., formerly the United States Housing Authority, to recover for work done and materials furnished under a subcontract with the contractor. The rights of the six use plaintiffs and an intervener are all dependent upon Pollia and further reference to them is not necessary. The amended complaint contains seven counts. In count one, Pollia sought recovery of an estimate dated October 17, 1946, for $17,848.80. In count two, he sought recovery of an estimate dated November 4, 1946, for a like sum. In count three, he sought recovery for additional work and materials furnished in the sum of $8,267.20, on 102 housing units, excluded from the contract. Count four sought the recovery of $2,311.50, for alleged extra work. Count five was for $24,342, alleged loss on 300 housing units on which the work had not been completed when the

contract was terminated. Count six was for $496.72, for materials furnished by Pollia to the contractor. Count seven sought recovery of $2,356.97, alleged to be due for loss resulting from unreasonable and unjustifiable delay on the part of the contractor in providing Pollia with materials at erection sites. Trial was had to the court.

The United States appeared specially and moved to dismiss the action as to the F.P. H.A. on the ground that it was an action against the United States and that it had not consented to be sued. The motion was overruled. The trial court entered judgment for Pollia on counts one and two in the amount of the two estimates, totaling $35,695.60. It gave judgment on count three for $8,226.28, on count four for $2,311.50, and on count six for $1,759.12. On counts five and seven, judgment was entered for the defendants. This appeal does not challenge the court's judgment on count six.

The facts necessary to consider the questions presented by this appeal, briefly are as follows:

On June 14, 1946, the United States through the F.P.H.A. entered into a contract with the contractor for the removal of 900 housing units from the State of Washington and the resurrection thereof in the States of Montana and Wyoming. This was a cost plus fixed fee contract. The contract provided that with the approval of the contracting officer of the F.P.H.A., the contractor could employ subcontractors to do part of the work. On September 2, 1946, with the approval of the United States, Nickel entered into a subcontract with Pollia for the removal and reinstallation of the plumbing and heating fixtures on 402 of the units for a total consideration of $89,244. The subcontract provided for partial payments as the work progressed at the end of each calendar month, or as soon thereafter as practical, on estimates made by the subcontractor and approved by the contractor. It also incorporated the provisions of the base contract with respect to labor, wages, and such matters. It provided that except where

otherwise specifically provided, whenever the contractor and subcontractor were unable to agree on any question of fact arising under the contract, the dispute should be submitted to the contracting officer who signed the principal contract, or his duly authorized representative, whose decision should be final and conclusive upon the parties. In the interim the subcontractor was required to diligently proceed with the work as directed. The contract also provided that if a performance bond was required by the government, the subcontractor was to furnish the same.

On October 17, 1946, the subcontractor submitted to Ernie C. Bartlett, project engineer for the United States, an estimate for work done in the amount of $17,846.60. The material part of this estimate is as follows:

"I hereby certify that 20% of the plumbing and heating work on the following * * * has been done to this date Oct. 17, 1946.
                              "(S) Ernie C. Bartlett,
                                   "Project Engineer.
     "Date received .......... Received by (s) Scot H. Cross (Contractor's representative). Date inspected ............. Inspected by .......... (Government representative)."

A second estimate for an additional amount of $17,846.80, representing a purported additional 20% of the plumbing and heating work was submitted to Bartlett on November 4, 1946. It was signed by Ernie C. Bartlett, Project Engineer, and by Scot H. Cross, Contractor's representative, in identical language with estimate number one. Cross, who acknowledged receipt of these estimates, was the representative of the contractor at the demolition site and had full authority to act for the contractor.

Pollia transmitted the first of these estimates to J. B. Steele, the contractor's representative at Laramie, Wyoming, who was in charge of the work, and requested payment. He had, however, failed, as required by the contract, to submit a payroll with the estimate. Steele notified him by letter to comply with this provision of the contract. Pollia thereupon sent the pay-

rolls signed by Sharar. They were not in compliance with the requirements of his contract and were returned to him for correction. The payrolls also showed that the wages were not being paid in accordance with the terms of the base contract. Steele then became doubtful of Pollia's credit standing and conveyed that information to the Regional Office of F.P.H.A. On October 31, 1946, Frank Lubin, a representative of F.P.H.A., wired Nickel to require a performance and payment bond as required by the terms of the subcontract. On November 1, 1946, Pollia was notified by letter that it was necessary for him to furnish this bond and that no payment would be made until such bond was furnished.

The second estimate also was not accompanied by a certified payroll. After the receipt of this estimate, Steele went to Seattle to discuss the matter with Lubin. Lubin was a contracting officer representing the Government. Steele was informed that if payment of the estimate was made without the posting of the bond, it would be Steele's responsibility and that reimbursement would not be made until the bond was furnished. On the same day, Steele had a conference with Smith, Pollia's attorney and was advised that he doubted Pollia's ability to make a bond. An attempt was made to raise money for Pollia, but it failed when it was discovered that items which Pollia claimed had been paid were in fact not paid. On December 23, 1946, Pollia wired Steele as follows:

"San Francisco, Calif., Dec. 23, 1946.
"J. P. Steele, 617 Grand Ave.
"Due to failure on your part after making numerous promises to make payments to us that are past due we have advised the regional office today by wire that we were stopping operation of work covered by our contract.

"Andrew A. Pollia."

On December 30, 1946, Steele advised Pollia by letter that his subcontract was terminated in accordance with paragraph three thereof because of his continued refusal to diligently prosecute the work in accordance with the terms of the subcontract.

The trial court's ruling that the F.P.H.A. was a proper party defendant was predicated on its conclusion that it was the successor of the United States Public Housing Authority created under 42 U.S.C. A. § 1403. The trial court concluded that since the United States Public Housing Authority was invested by Congress with power to sue and be sued, the F.P.H.A., as successor thereto, could likewise sue and be sued. The correctness of this position is subject to serious doubt, but since we do not rest our conclusion that the trial court erred in overruling the motion to dismiss on that ground, we do not pass upon the question.

[1] It must be remembered that there was no privity of contract between Pollia and the F.P.H.A. His contract was with Nickel alone, and it was to Nickel alone that he must look for payment under his subcontract. Under the base contract, the F.P.H.A. agreed to pay Nickel the full consideration for performance of the entire work. When Nickel executed a subcontract with Pollia for performance for part of the work, he alone obligated himself to pay Pollia's consideration under that contract, and the consideration Pollia was entitled to receive from Nickel bore no relationship to the payments in the base contract between F.P.H.A. and Nickel. True, the base contract was a cost plus fixed fee contract. That obligated the Government to pay Nickel a sum sufficient to discharge all of Nickel's obligations under subcontracts executed in conformity with the provisions of the base contract. But the fact that the entire cost of the project came from the Government, did not create a contractual obligation between the Government and the subcontractors under contracts to which the Government was not a party. The subcontractor perforce was required to look to the one who promised to pay him for his work and to him alone. There being no privity of contract between Pollia and the Government, he could not maintain an action against the Government for money due him from

Nickel alone.[1] The motion to dismiss should have been sustained.

The trial court concluded that Pollia's telegram of December 23, 1946, announcing his stoppage of work on account of Nickel's failure to pay the two estimates of October 17 and November 4, 1946, was not a cancellation of his contract but was merely a stoppage of work pending payment of these estimates, and that failing in their payment, Nickel was not warranted in cancelling the contract. That there was a dispute between the contractor and the subcontractor not only as to these two estimates, but also as to the wages being paid by the subcontractor, his financial standing, and his ability to furnish the required performance bond seems clear. There was also an agreement on his part to continue with the performance of his work pending the adjustment of these matters. The objection to these two estimates, and the payment of wages by him, raised substantial questions and the contractor's objections were not capricious or arbitrary. There is some evidence in the record indicating that the matter had been submitted to the arbitrator for settlement but in any event Pollia was required to seek such settlement and was not warranted in stopping the work to force a settlement of the dispute. This is just what the provision for arbitration intended to avoid. Under these circumstances suspending operations by Pollia constituted a breach of the contract on his part and warranted the contractor in cancelling the same.

Furthermore, it seems clear to us, that Pollia was not entitled to receive these estimates because they had not been approved by the contractor. Under his subcontract, approval of these estimates was a prerequisite to their payment. It is clear that Cross did not purport to approve them. All he purported to do was to sign a receipt therefor and then forward them to the contractor. He forwarded them to Steele, the contractor's representative, and he, in turn, refused to approve them for the reasons already set out above.

The court did not make a finding whether the two estimates represented the actual amount of work completed on the theory that progress estimates of October 17 and November 4, 1946, had been approved by the proper representative of the contractor and that since Pollia was not in default of performance at the time the contract was cancelled, he was entitled to recover the amount of these estimates irrespective of whether they represented the exact amount of work completed. But since we conclude from the record that Pollia was in default and that his contract was lawfully terminated, we do not pass upon the correctness of the court's conclusion in this respect. Having breached his contract, Pollia could, upon termination thereof, recover only the reasonable value of the services rendered and of the material furnished.[2] These two estimates did not purport to be final estimates representing the exact amount of work completed. They were only what they purported to be, preliminary estimates to enable the contractor to make partial payments as the work progressed. It was, therefore, necessary to determine the reasonable value of such services based upon the percentage of completion of the contract.

In count three Pollia alleged that subsequent to the date of the second estimate he continued to perform work and furnish material of the reasonable value of

1. U. S. v. Driscoll, 96 U.S. 421, 24 L.Ed. 847; United States Steel Products Co. v. Poole-Dean Co., 9 Cir., 245 F. 533; Rumrich v. United States, 68 F.Supp. 792, 107 Ct.Cl. 313; Majestic Mfg. Corp. v. L. Risso & Sons Bldg. Co., Sup., 27 N.Y.S.2d 845.

2. Dermott v. Jones, 23 How. 220, 64 U.S. 220, 16 L.Ed. 442; U. S. v. Molloy, 2 Cir., 144 F. 321, 11 L.R.A.,N.S., 487; Milner v. Ruthven, 116 Colo. 22, 178 P. 2d 417; Briggs v. Robinson, 82 Colo. 1, 256 P. 639, 52 A.L.R. 1172; International Correspondence School v. Crabtree, 162 Tenn. 70, 34 S.W.2d 447, 78 A.L.R. 330; Lacy Mfg. Co. v. Los Angeles Gas & Elec. Co., 12 Cal.App. 37, 106 P. 413; Turner v. Egan, 116 Md. 35, 81 A. 877.

$8,276.28. In Finding No. 16, the trial court found that subsequent to November 4, 1946, Pollia continued to perform work and furnish material of the reasonable value of $8,276.28, for which judgment was entered. A consideration of the entire finding indicates that the court considered that all of this work and labor related to the 102 units which were lawfully cancelled. If work and labor was in fact performed in this amount on these 102 units after the date of the last submitted estimate and before they were cancelled from the contract, Pollia would be entitled to recover therefor. But a consideration of Pollia's own testimony compels the conclusion that no additional work or material was performed or furnished on these units after the date of the second estimate, and that this amount represents the gross profit he would have realized from these units had they not been cancelled. Thus Pollia testified: "I asked for damages in the sum of $8,276.28 because of terminated units. I reached this amount by having done forty per cent of the demounting for which we weren't paid which came to $9,-057.60. My estimation for completing the units was $52.06 each. This would be a cost of $5,310.12. *If the job had been done and completed I would have made a gross of $8,276.28.*" The clear import of this direct testimony is to say that he would have made a gross profit of this amount had he been permitted to complete the work on these 102 units. This he was not entitled to in any event since they were lawfully cancelled from the contract. Under the provision of the contract providing for an equitable settlement with regard to units cancelled therefrom, Pollia would be limited in any event to a reasonable profit on his part performance prior to the cancellation. Since, however, there must be a remand for further consideration of the court on other phases of the case, we do not direct judgment for the appellant on count three. If Pollia, on the further proceedings before the trial court can, notwithstanding his positive testimony in the record, show that he did in fact perform additional work and furnish additional material on these 102 units, and the exact amount thereof after November 4, 1946, he should be entitled to recover therefor.

 On count four judgment was allowed for extra work performed in cutting concrete slabs and in removing plumbing fixtures which was not a part of the original contract. The evidence on this question is not clear or free from doubt. However, in an effort to adjust the matter, Nickel offered to pay $2,311.50 for this work. We think there is sufficient evidence in the record to sustain the court's judgment on count four.

The judgment on count four is affirmed. In all other respects the judgment appealed from is reversed and the cause is remanded with directions to dismiss as to the F.P.H.A. and in all other respects proceed in conformity with the views expressed herein.