(155 App. Div. 162.)

DOCHTERMANN VAN & EXPRESS CO. v. FISS, DOERR & CARROLL HORSE CO.

(Supreme Court, Appellate Division, First Department. February 7, 1913.)

1. PRINCIPAL AND AGENT (§ 103*)—ACTIONS—EVIDENCE—ADMISSIBILITY.

A contract for the sale of an automobile truck provided for part payment upon delivery, and payment of the balance within 15 days, and that, if unsatisfactory, the purchaser might return the truck within 15 days, and the seller would refund the purchase price; the seller, however, to be given the opportunity to make the machine satisfactory before its return. The truck was not satisfactory, and defendant's agent S. repeatedly promised and attempted to make it work to the purchaser's satisfaction. In an action to recover back the purchase price, the purchaser's testimony that before paying the balance of the purchase price he was told by S. that, even if he paid for the truck, they would return the money if it was not satisfactory, was excluded. It was shown that, although S. did not sign a contract of sale, he conducted the final negotiations for the sale, had entire charge of the execution of the contract with respect to making a truck satisfactory to the purchaser, that the agent sent to collect the final payment, upon the purchaser's refusal to pay because the seller had not performed, referred him to S., and that the seller's general manager told the pur

---

chaser that S. had charge of the automobile department, and that he would have to see him about the condition of the truck. *Held*, that the testimony as to the promise made by S. before final payment of the purchase price should have been admitted.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 278–293, 353–359, 367; Dec. Dig. § 103.*]

2. APPEAL AND ERROR (§ 927*)—REVIEW—PRESUMPTIONS.

Where, although some of the evidence on an issue was stricken out, the issue was submitted without objection to its submission because of the insufficiency of the evidence, it would not be presumed that a motion to dismiss the complaint, which was granted after a verdict for plaintiff, was granted because of the insufficiency of the evidence on that issue.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2912, 2917, 3748, 3758, 4024; Dec. Dig. § 927.*]

3. SALES (§ 391*)—RECOVERY OF PURCHASE PRICE BY PURCHASER.

A contract for the sale of an automobile truck provided for part payment upon delivery and payment of the balance within 15 days, that, if the purchaser within 15 days should decide the truck to be unsatisfactory, the seller would refund the purchase price, but that it should be given an opportunity to make the machine satisfactory. The truck was *not* satisfactory *to* the purchaser, but the purchaser at the expiration of the 15 days made the final payment in reliance on the assurance of the seller's agent that they would return both payments if unable to make the truck satisfactory to the purchaser. *Held* that, the seller having failed to make the truck satisfactory, the purchaser was entitled to recover both payments, whether or not the seller's agent had authority to change the contract, or to make a new one, since the seller could not accept the purchaser's money, payment of which was induced by. the representations of its agent, without becoming liable for its return as promised.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1110–1127; Dec. Dig. § 391.*]

4. SALES (§ 391*)—RECOVERY OF PURCHASE PRICE BY PURCHASER.

Under a contract for the sale of an automobile truck, providing for part payment on delivery and payment of the balance within 15 days, and that if, within 15 days, the purchaser should decide the truck to be unsatisfactory, the seller would refund the purchase price, but should be given an opportunity *to* make *it* satisfactory, if construed *to* make the final payment due and payable at the expiration of 15 days, even though the truck had proved unsatisfactory and attempts were being made to make it satisfactory, the purchaser was entitled to the return of both payments if the truck ultimately proved unsatisfactory, whether or not he was induced to make the final payment by a promise that it would be repaid.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1110–1127; Dec. Dig. § 391.*]

5. APPEAL AND ERROR (§ 1175*)—DISPOSITION OF CAUSE—REINSTATING VERDICT.

Under Code Civ. Proc. § 1317, as amended by Laws 1912, c. 380, providing that the Appellate Division may reverse or affirm, wholly or partly, or may modify the judgment or order appealed from, and as to any or all of the parties, and may render judgment of affirmance, of reversal and final judgment, or judgment of modification, or grant a new trial, and that, when a trial has been before a jury, its judgment must be rendered either upon special findings or the general verdict, or upon a motion to dismiss or to direct a verdict, the Appellate Division may predicate its judgment upon a general verdict; and hence, where the complaint was dismissed on a motion reserved for decision until

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

after the verdict, it could reinstate the verdict, where no errors preju-
dicial to defendant's rights were committed on the trial, requiring a new
trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–
4587; Dec. Dig. § 1175.*]

Appeal from Trial Term, New York County.

Action by the Dochtermann Van & Express Company against the
Fiss, Doerr & Carroll Horse Company. From an order setting aside
a verdict for plaintiff, and dismissing the complaint, and from a judg-
ment dismissing the complaint, plaintiff appeals. Reversed, verdict
reinstated, and judgment for plaintiff directed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-
LIN, SCOTT, and DOWLING, JJ.

O. A. Samuels, of New York City, for appellant.
Albert H. T. Banzhaf, of New York City, for respondent.

LAUGHLIN, J. Both parties to the action are corporations. The
plaintiff was engaged in the business of furniture and piano moving
and general trucking, and the defendant, among other things, sold
automobile trucks in its own right. On or about the 9th day of May,
1907, the plaintiff and defendant entered into an agreement in writing
by which the defendant agreed to sell and the plaintiff agreed to pur-
chase "one two-ton Reliance truck" for $2,500, and the terms of pay-
ment as provided in the contract were 20 per cent. cash with the order
and the balance within 15 days from the date of delivery, which was
specified in the contract to be May 10, 1907. The first payment was
made as provided in the contract, and the truck was delivered on the
11th day of May, 1907. The further provisions of the contract mate-
rial to the questions presented by the appeal are as follows:

"Guarantee.—The company agrees to make good by repairs or replacement,
within one year from first use, any part showing defect in material or work-
manship on said truck, provided the part is delivered to the company by
buyer, transportation prepaid, and clearly shows defect, and is tagged with
truck or motor number from which taken and date of break. This guarantee
does not cover breakage or the cost of repairing when damage is done by
misuse, accident, or neglect. Tires, coils, and accessories are guaranteed by
the various makers, to whom all claims must be made direct.

"It is further agreed that if, at any time within 15 days from date of
delivery, the purchasers shall decide the truck to be unsatisfactory, the com-
pany will refund the purchase price, less $15 for every day truck was in
operation.

"It is understood that the purchaser pays all operating and maintenance
expenses during the 15-day trial period.

"The company is to be given any opportunity which it desires to make
machine satisfactory and economical before it is returned.

"The above guarantee is upon condition that only men furnished or in-
dorsed by the company operate the machine during trial periods as above
referred to."

During the first 15 days after the delivery of the truck it was oper-
ated by a chauffeur in the employ of the vendor; but its operation
was not satisfactory to the vendee, and there was evidently sufficient
ground for dissatisfaction, for on the tenth day, while transporting

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a load of furniture from New York to Nyack, without apparent cause or explanation, it ran off the road and into a swamp, and was badly damaged, necessitating its being taken to a garage for repairs. After repairs were made, the truck was again returned to the service of the vendee; but it did not operate satisfactorily, and the treasurer of the vendee so informed the sales agent of the vendor, one Sanders, through whom the contract for the purchase was finally negotiated, who thereupon gave assurances that the vendor would live up to its guaranty, and the vendee continued to use the truck until the fifteenth day, when it again informed Sanders that the truck was not what it was guaranteed to be, and was not running as well as it did before the accident, and was not "running at all satisfactorily," or doing the work to the satisfaction of the vendee, and that the vendee elected to return it, and demanded the return of the money paid, less $15 for each day the machine was used, as provided in the contract. Sanders then asserted the right of the vendor to make the "machine satisfactory" before the vendee could return it, and claimed that the vendor had the right under the contract to take the machine back and repair it and endeavor to make it satisfactory.

The representative of the vendee thereupon stated that he thought that the machine could not be made satisfactory, and that it had been "running so poorly" since the accident that he doubted whether it would ever work satisfactorily. Sanders said that the vendor was responsible, and desired "to make this machine satisfactory," and hoped to please the vendee and to sell other machines, not only to the vendee, but to others in the same line of business who were watching the outcome of the trial of this machine, and stated that "for that reason we will make it satisfactory," and said that the vendor would overhaul the entire machine "and repair it so that it will be in good shape to run." Sanders then admitted that the machine "got a bad smash at Nyack," and that it would be necessary to take the engine out and to take "the whole thing" apart, and that if that was done he was sure that "the machine will work all right." Thereupon, and on the same day, the truck was taken to the garage of the vendor. It was returned, in charge of another chauffeur, the next day to the vendee; but it did not work satisfactorily. There was great difficulty and delay in starting it, and it would frequently stop without any apparent or readily discoverable cause. This was brought to the attention of Sanders, who, after observing and working over the truck a long time in starting it, assured the treasurer of the vendee that the further it went the better it would go. However, it continued to stop without apparent cause, and the same difficulty was repeatedly encountered in starting it.

On the 28th day of May, another salesman of the vendor, one Haskins, through whom negotiations for the sale of the truck were opened, called at the office of the vendee for the balance of the purchase price, and was informed by its treasurer that the truck was not what it was guaranteed to be, that it was not satisfactory, and that the vendee would not accept it, but would be willing to take a new car. At the suggestion of Haskins, they went to the office of the vendor and had an interview with Sanders, to whom this statement by the treasurer of the vendee was reiterated, and Sanders in substance asked that the truck

be given another trial, and promised to make it "satisfactory," and said that the vendor could not give the vendee another truck, but it could and would repair the truck and make it do the work satisfactorily, and further said:

"If you had paid the full price in the beginning, we would still live up to the agreements, because you know who you are dealing with."

The next day after this interview, the vendor sent the truck to the vendee again, and it was used for one trip; but we are not informed by the record how it worked on that occasion. On the next day— May 30th—Haskins called at the office of the vendee with a receipt and requested the final payment, which was made by check.

[1] The plaintiff further showed that, at the interview at the office of the vendor on the 28th day of May, Sanders said to the vendee's treasurer:

"You can pay for this machine, and even if you pay for the machine we will make good all that we claim for this machine; and if it is not satisfactory, then we are always ready to return the money, less the $15 per day that you use it, or give you another machine. So, if you had paid for the automobile in the beginning, it would not make any difference, because Fiss, Doerr & Carroll stand behind this machine, and they will make good anything that we guarantee it to do, and if you paid for the machine, it is just the same as if you had paid for it on the first day of the sale."

At the commencement of this testimony counsel for the defendant said:

"I object to anything that might have been said by Mr. Sanders to vary the terms of this contract."

And the court ruled that the evidence would be taken subject to a motion to strike it out. After the evidence was given, a motion in behalf of defendant to strike it out was granted, and plaintiff duly excepted. We think that the evidence was competent, and should not have been stricken out. Sanders had not signed the contract in behalf of the vendor, but he had conducted the final negotiations, and had entire charge of the execution of the contract with respect to fulfilling the obligations of the vendor and to complaints concerning the operation of the truck; and, as has been seen, the agent who was sent out to collect the final payment referred the vendee's representative to Sanders to adjust the matter, when payment was refused on the ground that the vendor had not performed. Moreover, according to the testimony of the vendee, Carroll, the general manager of the vendor, informed him that Sanders had charge of the automobile department, and when complaint was made with respect to the operation of this truck he said:

"Well, I have nothing to do with that. You will have to see Mr. Sanders. He has charge of that and you will have to fix it with him."

And this was not specifically denied by Carroll, who was subsequently called as a witness for defendant. Furthermore, it appears that Sanders, in his correspondence for the defendant, to some extent, at least, used a rubber stamp by which his name was signed as "manager"; but Carroll says that he was not aware of this. Sanders was not a witness upon the trial.

The vendee continued to use the truck, and further used it on at least 13 different days prior to September 27th of the same year; but it does not appear that it was operated by a person in the employ of the vendor. During a large part of this time, and for the entire period from July 17th to August 28th, the truck was in the repair shop of the vendor. It does not expressly appear where the truck was—although it may be inferred that it was in the possession of the vendee—or what use, if any, was made of it between the 28th day of August, and the 27th day of September; but on the last-mentioned day the treasurer of the vendee informed Sanders that it was not satisfactory, and that unless the vendor would replace it with a new one the vendee would be obliged to sue for the return of its money. Sanders thereupon asked for further time within which to make the truck satisfactory, and sent for it. The truck was then at the vendee's place of business. After the chauffeur sent by the vendor started the truck to take it back to the vendor, the driving shaft broke, and the truck was hauled back to the vendee's stable by a team. The vendor made no further effort to take possession of it or to repair it. Sanders thereafter informed the treasurer of the vendee that the vendor would do nothing further with respect to the truck until the vendee paid for the repairs theretofore made thereon, for which he then presented a bill for over $200, "pretty near $230," and stated that the vendee could not get its money back, and that the vendor would make the machine satisfactory after the bill for repairs was paid.

This action was then brought. The defendant interposed a counterclaim for $294.55 for repairs to the truck and for services of the chauffeur, such services being charged for 10 days at $3 per day; but on the trial the counterclaim was withdrawn. The evidence with respect to the *actual* time the truck was used is not definite. An employé of the vendee, who always went out with the truck, was asked how many days it was in the vendee's possession and how many trips it made, and he replied: "I made about 10 trips." In submitting the case to the jury, the attorney for the plaintiff, in presenting its claim, allowed a deduction of $15 a day for 15 days, and this apparently was acquiesced in without question, and the verdict was rendered on the basis of the payments made by the vendee, with that deduction.

[2] Notwithstanding the fact that some of the evidence tending to show that the final payment was made by the vendee on the express representation that if the vendor was unable to change the machine, so that it would work satisfactorily, the money was to be returned, was struck out, still the issue was submitted to the jury as if that evidence was in the case, or as if the other evidence was sufficient to show an agreement on the part of Sanders for the return of the money if the machine could not be made satisfactory; for the court submitted to the jury the question as to whether or not Sanders was authorized by the vendor to change the contract, and instructed the jury, in effect, that unless Sanders was so authorized the plaintiff could not recover. It is alleged in the complaint that the second payment was made on that agreement. The attention of the court in submitting the case to the jury was not drawn to the fact that some of the evidence bearing on this proposition had been stricken out, and it was

not claimed that the evidence remaining in the case was insufficient to show that Sanders had undertaken to agree for the vendor to repay the money if the machine could not be so changed that it would work satisfactorily. The real question of fact presented to the jury was with respect to Sanders' *authority* to make such an agreement for the vendor.

At the close of the evidence counsel for the defendant moved to dismiss the complaint and for the direction of a verdict. The court. denied the motion to direct a·verdict and reserved decision on the motion to dismiss. After the rendition of the verdict in favor of the plaintiff, counsel for defendant moved to set it·aside and for a new trial, and thereupon the court granted the motion to set aside the verdict and dismissed the complaint. The case shows that it contains all of the evidence and the exceptions of both parties. No opinion was written by the learned trial justice. In the circumstances, it is not to be inferred that the complaint was dismissed upon the theory that the evidence was insufficient to show that the second payment was made on the agreement on the part of Sanders that it would be repaid if. the truck was not so altered as to do the work of the vendee satisfactorily; for, as already observed, it was submitted to the jury upon the theory that there was sufficient evidence of a parol understanding between Sanders and the treasurer of the vendee to that effect.

[3] Nor can the dismissal be sustained upon the theory that Sanders was not authorized to make such an agreement. On the uncontro-. verted evidence, the vendee was justified in refusing to accept the truck, and in tendering its return at the expiration of the fifteenth day, and in demanding the return of the down payment. The vendor, however, by the express terms of the contract, was entitled to further time to endeavor to perform on its part. During that period the vendee would have been justified in refusing to make the final payment; but it appears that the vendor manifested confidence in its ability to make such change and alterations·in the truck as would be a compliance with the contract. In the circumstances it is quite clear that, if the vendee was induced to make the final payment on the assurance that the, vendor could and would fulfill its contract, such payment would be subject to the terms of the contract with respect to the orig-. inal payment, and on the failure of the vendor to perform within a reasonable time the vendee would be entitled to a return of the amount paid. Regardless of whether Sanders originally had authority to change the contract or to make a new one, the vendor could not accept the vendee's money in these circumstances without becoming liable to return it, if this payment were induced by·representations on the part of the vendor's agent, such as are claimed to have been made. Sanders unquestionably at this time was representing the vendor, both with respect to performing its contract.and requiring performance on the part of the vendee, and his principal is chargeable with knowledge of the negotiations which he had with the vendee which resulted in the final payment.

[4] It is contended in behalf of the respondent that at the expiration of the 15 days by the terms of the contract the final payment became due and payable, and that it was entitled to receive that pay-.

ment unconditionally. If that be the correct construction of the contract—a point upon which it is not necessary to express an opinion—then it is perfectly clear that, as matter of law, regardless of whether any representation was made by Sanders with respect to the repayment of the money, the vendee would be entitled to a return of both payments if it ultimately appeared that the truck of which the vendee justly complained at that time could not be made to comply with the contract, or that the vendor abandoned further efforts in that direction, and on that theory there would be no question for the jury. We are of opinion, therefore, that the court erred in dismissing the complaint.

[5] The remaining question is whether the verdict can be and should be reinstated. Attention is not drawn to any exception upon which it is claimed that any error prejudicial to the rights of the defendant was committed upon the trial which would require a new trial. The sole contention upon the part of the respondent on this point is that the court is without power to reinstate the verdict, on account of the fact that the dismissal of the complaint was pursuant to a motion made before the rendition of the general verdict, upon which decision had been reserved. We do not deem it necessary to discuss or to distinguish the authorities on that point under the former practice; for we now deem it perfectly clear, by the amendment made to section 1317 of the Code of Civil Procedure (chapter 380, Laws 1912), that the Appellate Division is authorized on the review of jury cases to predicate its judgment upon a general verdict.

It follows, therefore, that the order and judgment should be reversed, and the verdict reinstated, and judgment is directed to be entered for the plaintiff upon the general verdict, with costs of the action and of the appeal. All concur.