460

V. J. LeBarron, appellant, v. City of Harvard, appellee.

Filed July 12, 1935. No. 29268.

*Sterling F. Mutz, Cloyd L. Stewart* and *Robert S. Stauffer,* for appellant.

*D. B. Massie, H. G. Wellensiek* and *John M. Paul, contra.*

Heard before Goss, C. J., Rose, Good, Eberly, Day, Paine and Carter, JJ.

Eberly, J.

This is the second appearance of this case in this court. The titles differ, however. At the former hearing the issues on appeal were presented as O. M. Campbell Company v. City of Harvard, and the disposition thereof is reported under that title in 123 Neb. 539. After reversal and remand, V. J. LeBarron acquired the interest of O. M. Campbell Company, and, as its successor, was substituted as party plaintiff in an amended petition filed with leave of court. The amended petition, in addition to setting forth the acquirement of the cause of action by LeBarron as assignee, pleaded substantially the same cause of action as was relied upon in the original petition. To this amended petition the defendant filed its answer which included affirmative defenses, and plaintiff then replied denying generally the allegations of the answer.

The case was tried to a jury.

Accepting the recital in defendant's brief as a summarization of the record, it appears that, "At the close of the evidence, appellee (City of Harvard) moved for a directed verdict in its favor. The trial court reserved its ruling on this motion and submitted the case to the jury. * * * After the jury returned a verdict in favor of appellant (in the amount as prayed), the appellee filed a motion for new trial and for judgment notwithstanding the verdict. On the hearing of these motions, the trial court sustained the motion for a directed verdict made at the close of the evidence, and the motion for judgment notwithstanding the verdict, for the reason that the appellee, City of Harvard, failed to make an appropriation, and did not have *on hand an unexpended and unappropriated balance* out of which the consideration of the contract sued upon could be paid."

Accepting the resumé quoted as substantially accurate, in the light of the jury's verdict, the conclusion is that a formal contract in writing was honestly made and entered

into by the Campbell Company with the City of Harvard for a certain audit of its records, at a definite price, and was in all respects properly performed and carried out; and recovery was denied by the trial court solely because the unused and unappropriated money in the general fund and the annual appropriation of 1929 were insufficient to meet the expense necessitated by the contract sued on.

This forms the crux of the case now presented to this tribunal. In this opinion the parties will be designated as in the trial court.

On the former hearing this court determined, upon the record then before it, that the making of a contract for an audit of the records of the city of Harvard was within its corporate powers. It was also held:

"Unused and unappropriated money in a city treasury in the general fund at the time a contract for a necessary city audit is executed may, for the purposes of the contract, be available for payment of the auditor's stipulated compensation.

"Where unused and unappropriated money in a city treasury in the general fund and the annual appropriation therefor are sufficient to meet the expense of a necessary city audit and are available for that purpose at the time the contract for the audit is executed, subsequent depletion of the fund would not make the contract void.

"In absence of evidence showing misconduct or disregard of law, regularity of official acts is presumed." *Campbell Co. v. City of Harvard*, 123 Neb. 539.

The foregoing principles thus announced constitute the law of the case on the second appeal.

On such second appeal, this court affirmed the action of the trial court in directing the entry of a judgment against the plaintiff in *LeBarron v. City of Harvard*, 127 Neb. 899. By his motion for rehearing and brief in support thereof, plaintiff challenges the correctness of this affirmance, on the following grounds in substance: That in view of certain facts clearly established by the record, the controlling statutes have been improperly construed or wrongfully ap-

plied; that the exclusion by the trial court of a stipulation previously entered into by the parties as to the existence of a fund of $1,111.11 in possession of the city treasurer at the time of the making of the contract, made up from moneys previously appropriated and unexpended, constituted a vital error.

"As a starting point for the consideration of the question presented, we may adopt the language of Judge Dillon, that a municipal corporation 'possesses, and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable.'" *Christensen v. City of Fremont,* 45 Neb. 160.

The following statutory provisions appear to control or shed light upon the proper determination of the questions involved in this appeal, in so far as the question of corporate powers is concerned, viz., sections 17-566, 17-429, 77-1201, 77-1801, 77-1803, Comp. St. 1929.

In connection with these statutory provisions the undoubted principles of construction appear to be:

"All statutes upon the same general subject are to be regarded as part of one system, and later statutes are to be considered as supplementary or complementary to those preceding them upon the same subject.

"Statutes *in pari materia* should be construed together." *State v. Omaha Elevator Co.,* 75 Neb. 637.

See, also, *State v. Searle,* 86 Neb. 259; *Rohrer v. Hastings Brewing Co.,* 83 Neb. 111.

"The fiscal and municipal year of each city and village shall commence on the first Tuesday of May each year in so far as revenue and fiscal management are concerned, and on the last Tuesday in April in so far as organization and legislation are concerned." Comp. St. 1929, sec. 17-566. It was enacted in its present form in 1927. Laws 1927, ch. 46.

In 1887 there was duly enacted the following provision conferring powers on cities of the second class and villages: "To levy taxes for general revenue purposes, not to exceed twenty-five mills on the dollar in any one year, on all property within the limits of said cities and villages taxable according to the laws of the state of Nebraska, the valuation of such property to be ascertained from the books or assessment rolls of the assessor of the proper precinct or township." Comp. St. 1929, sec. 17-429. See, however, sec. 77-1201, Comp. St. 1929.

In addition, we have the following statutory provisions which are pertinent to the present controversy:

Section 17-569 provides, in part: "The city council of cities and board of trustees in villages shall, within the first quarter of each fiscal year, pass an ordinance, to be termed 'the annual appropriation bill,' in which such corporate authorities may appropriate such sum or sums of money as may be deemed necessary to defray all necessary expenses and liabilities of such corporation, not exceeding in the aggregate the amount of tax authorized to be levied during that year; and in such ordinance shall specify the objects and purposes for which such appropriations are made, and the amount appropriated for each object or purpose."

By section 17-570 it is provided: "Before such annual appropriation bill shall be passed, the council or trustees shall prepare an estimate of the probable amount of money necessary for all purposes to be raised in said city or village during the fiscal year for which the appropriation is to be made, including interest and principal due on the bonded debt and sinking fund, itemizing and classifying the different objects and branches of expenditures, as near as may be, with a statement of the entire revenue of the city or village for the previous fiscal year, and shall enter the same at large upon its minutes, and cause the same to be published four weeks in some newspaper published or of general circulation in the city or village."

Section 17-572 provides: "No contract shall be hereafter

made by the city council or board of trustees, or any committee or member thereof; and no expense shall be incurred by any of the officers or departments of the corporation, whether the object of the expenditures shall have been ordered by the city council or board of trustees or not, unless an appropriation shall have been previously made concerning such expense, except as herein otherwise expressly provided."

Section 77-1803 reads as follows: "The proper authorities of cities, villages, * * * shall annually on or before the first Monday in June, certify to the county clerk the several amounts which they severally require to be raised by taxation, including all amounts due upon legal and valid bonds outstanding against such corporation; Provided, school district taxes shall be certified to the county clerk on or before the first Monday in July."

In view of the language employed in the statutes quoted, it is quite obvious that the power of enacting assessment ordinances conferred by section 17-429, and the power and purpose of adopting appropriation ordinances or appropriation bills vested in cities of the second class by sections 17-569 and 17-570, derived from distinct grants of power and finding their respective sources in separate legislative provisions, are mutually independent and unrelated save and except as section 17-572 expressly provides to the contrary.

While these statutes fairly contemplate that the appropriation bill shall in order of time precede the levy of the municipal tax if such levy be required, it is not enjoined that a tax assessment, levy or ordinance shall constitute a part of the same or be enacted contemporaneous therewith. Indeed, we might well take judicial notice of the fact that, in at least one of the municipalities within this state, tax levies for municipal purposes are wholly unnecessary, yet even in this unusual situation the enactment of an appropriation bill might well be deemed to properly answer the requirement of the statutes. So, by the express provisions under consideration the exercise of the power to contract

by cities of the second class is expressly and solely conditioned on the fact that the requisite appropriation therefor shall have previously been made, "except as otherwise herein provided," which exception includes, as this court has determined, the addition of unexpended funds of previous levies formerly appropriated.

True, certain statutory requirements must be met in the adoption of the annual appropriation bill. An estimate, as provided by section 17-570, is directed. So, also, the amount carried by the annual appropriation bill is limited to an amount not exceeding in the aggregate the amount of the tax authorized to be levied during that year. "Authorized," as here employed, agreeable to the definition of lexicographers, expresses the thought, viz., "possessed of or endowed with authority."

The authority of a city of the second class to levy taxes, as to aggregate amount, is clearly determined by the due application of three separate statutory provisions, viz.: (1) Section 17-429 prescribing the maximum rate permitted; (2) chapter 77, Comp. St. 1929, providing for the valuation of the property within the corporate boundaries subject to assessment; and (3) section 17-570, setting forth the terms of an estimate of the probable amount of money needed. In other words, the amounts carried by the appropriation bill are not limited to the taxes actually assessed, but rather are determinable by the taxes which may be lawfully assessed.

It therefore follows that, after the due passage of the appropriation bill by a municipality, its power to lawfully contract is determined by the amounts carried by such bill, added to the amount on hand of previous levies and appropriations at the date of making such engagement, as heretofore determined by this court. *Campbell Co. v. City of Harvard,* 123 Neb. 539. This power to contract is in no manner diminished by failure of the corporate authorities to assess to the extent actually authorized.

It also follows that the appropriation bill here before us, in the amounts carried, did not exceed the amount of tax.

authorized to be levied by the city of Harvard during the fiscal year beginning May 1, 1929, and therefore such amounts may not be reduced because of the terms of the assessment ordinance in determining the contractual powers of that city relating thereto.

The present record discloses that at the second trial of this case in the district court a jury was impaneled and sworn, and the production of testimony commenced. Plaintiff then offered in evidence exhibit 3. This exhibit is disclosed by the bill of exceptions to be a stipulation entered into in open court at the time of the first trial of this cause between the plaintiff and defendant.

It was as follows: "Stipulation: It is hereby stipulated and agreed by and between the parties hereto that exhibit 1 being the annual appropriation ordinance No. 150 was the only appropriation made by the defendant city for the municipal year ending April 30, 1930, and that the same may be received in evidence and a copy furnished for the record.

"It is further stipulated that at the beginning of the fiscal year beginning May 1, 1929, and ending May 1, 1930, there was in the general fund unexpended from the preceding fiscal year the sum of $1,111.11.

"It is further stipulated that on October 22, 1929, the date of the execution of the contract, there was in the general fund of the city of Harvard the sum of $2,287.96."

Upon the formal offer of exhibit 3 the following occurred:

"Mr. Wellensiek: Objected to as incompetent, irrelevant, immaterial, not the best evidence and for the further reason that such stipulation was entered into in the former trial for the purpose of presenting to the court the legal propositions involved herein, and for the further reason that said stipulation was entered into upon the representations of the plaintiff and his counsel that the statement therein was correct, and which we are now prepared to show was not correct, and that the defendant entered therein relying upon that statement of plaintiff and coun-

sel and that none of the officers of the city were present to prove its correctness. The Court: Let me see it. (Done) Mr. Wellensiek: And we object for the further reason that the stipulation is not binding on the defendant. The Court: I think the objection is good. A stipulation made at a former trial, except by agreement of the parties, is not binding and is not competent evidence in this trial. Mr. Mutz: I was under the impression that a stipulation entered into in open court was binding unless set aside. The Court: It is binding as far as that trial is concerned. Mr. Mutz: But this stipulation, exhibit 3, is part of the bill of exceptions which was settled in the first trial of this case. * * * The Court: Proceed."

Without setting forth the details of the record, it may be said that all questions of foundation were eliminated, and the point fairly presented by this record is whether the stipulation made and used at the first trial was competent evidence and binding at the second trial. LeBarron, it is true, had been substituted for the O. M. Campbell Company, as assignee of that corporation, but he succeeded to whatever rights, if any, were vested by the terms of the stipulation in the O. M. Campbell Company. It will be noted that defendant's objection to the admission of the stipulation in evidence is not, in terms or effect, an application to be relieved therefrom through the exercise of judicial discretion by the court, but is an unconditional challenge to the validity and binding force of the stipulation itself.

Before us here is a stipulation of the parties made in open court at the time of the first trial. Its terms contain no express limitation that it is intended for use at the first trial only, neither does it expressly provide that it shall be binding in the event of a second trial, but it is a solemn assertion of the existence of certain facts in their nature unchangeable.

The principles of law and procedure embodied in the following authorities seem in point:

"An express waiver, made in court or preparatory to

trial, by the party or his attorney, conceding for the purposes of the trial the truth of some alleged fact, has the effect of a confessory pleading, in that the fact is thereafter to be taken for granted; so that the one party need offer no evidence to prove it, and the other is not allowed to disprove it. This is what is commonly termed a solemn —*i. e.* ceremonial or formal—or *judicial admission,* or *stipulation.* It is, in truth, a substitute for evidence, in that it does away with the need for evidence. This judicial admission is sharply marked off from the ordinary or quasi-admission—which indeed does not deserve to bear the same name. The latter is merely an item of evidence, available against the party on the same theory on which a self-contradiction is available against a witness." 5 Wigmore, Evidence (2d ed.) 604, sec. 2588. See, also, *Flansburg v. Shumway,* 117 Neb. 125; *Ayres v. Barnett,* 93 Neb. 350.

Where a trial is had on a written statement of facts, not limited by its terms, and admitted to be true in open court, and the judgment rendered on that trial is reversed and the cause remanded, on a subsequent trial that statement is admissible in evidence. *Prestwood v. Watson,* 111 Ala. 604; 1 Greenleaf, Evidence (13th ed.) sec. 186; 60 C. J. 84.

It is not necessary that an agreed statement of facts, admitted by the parties to be true in open court, should be signed by their attorneys. *Prestwood v. Watson,* 111 Ala. 604.

But if by their terms the stipulations are not limited, and are unqualified admissions of facts, the limitation is not implied and they are receivable in any subsequent trial between the parties. *Doe d. Wetherell v. Bird,* 7 Car. & P. (Eng.) *6; *Langley v. Earl of Oxford,* 1 Mees. & W. (Eng.) *508; *Holley v. Young,* 68 Me. 215; *Central B. U. P. R. Co. v. Shoup,* 28 Kan. 394; *Harris v. McArthur,* 90 Ga. 216; *Johnson v. Wright,* 19 Ga. 509.

"A stipulation allowing the evidence in a certain case to be read 'on the trial' of another case applies to any trial

of the case, whether first or second, so long as neither party is relieved from the obligation by an affirmative application to the court, and notwithstanding notice by one of the parties after a first trial that the party will no longer consider itself bound." *Herbst v. Vacuum Oil Co.*, 22 N. Y. Supp. 807. See, also, *Continental Ins. Co. v. Delpeuch*, 82 Pa. St. 225.

In *McCarthy v. Benedict*, 90 Neb. 386, this court say, in part: "There is no doubt that, when stipulations of fact in an action are improvidently made by mistake of the parties, the court has discretion to relieve the parties from the consequences thereof. In such case the parties *should act promptly* and call the attention of the trial court to the mistake of fact in the stipulation, and, when that mistake is clearly found *with a proper showing of diligence,* the courts generally correct such mistake." (Italics ours.) In the *McCarthy* case relief from the stipulation, however, was denied.

The rule well supported by authority is that delay in asking that relief may defeat the application. *Northern P. R. Co. v. Barlow,* 20 N. Dak. 197; *State v. Superior Court,* 151 Wash. 413.

A stipulation by the parties as to the facts, so long as it stands, is conclusive between them, and cannot be contradicted by evidence tending to show the facts otherwise. *City of Chicago v. Drexel,* 141 Ill. 89; *Ward & Co. v. Industrial Commission,* 304 Ill. 576; 5 Wigmore, Evidence (2d ed.) 605, sec. 2590; *Andrews v. Olaff,* 99 Conn. 530.

Parties will not be relieved from stipulations in the absence of a clear showing that the matter stipulated is untrue, and then only if the application for such relief is seasonably made, and good cause is shown for granting it. 25 R. C. L. 1099, sec. 6; *Smith v. Smith,* 90 Fla. 824; *Muller v. Dows,* 94 U. S. 277; *United States v. Davison,* 1 Fed. (2d) 465; *Brown v. Cohn,* 88 Wis. 627; *Franklin v. National Ins. Co.,* 43 Mo. 491; *Holley v. Young,* 68 Me. 215; *Hutchings v. Buck,* 32 Me. 277.

A motion addressed to the court for relief, sustained by

proper proof, with due notice to opposing party, has been recognized as proper practice. *Ish v. Crane,* 13 Ohio St. 574; *In re Reed,* 117 Fed. 358. The opposing party must be given due notice of the proposed application for relief. *Carnegie Steel Co. v. Cambria Iron Co.,* 185 U. S. 403.

The stipulation here in question establishes the existence of a certain fact. The truth of this fact was necessarily disclosed by the city's books, which were continuously in possession of defendant and subject to its inspection. The stipulation was solemnly made in open court and, under the record here presented, without qualification as to its use. A judgment was entered in the district court at the first trial for the defendant city. On July 12, 1932, the judgment so entered was reversed by this court, expressly on the ground that it was stipulated that at the beginning of the fiscal year, beginning May 1, 1929, and ending May 1, 1930, there was in the general fund unexpended from the previous fiscal year the sum of $1,111.11, which, together with the amounts carried by the appropriation bill for 1929-1930, was sufficient to support the contract here in suit. So far as disclosed by the present record, no application was ever made by the defendant city to be relieved from the terms of the formal, solemn, judicial stipulation, the legal effect of which was so adjudicated by this court. Though amply warned by the history of the litigation to which it was a party, there is no evidence that any diligence whatever was exercised in this matter by defendant, and indeed we must conclude that the first information received by the plaintiff herein of defendant's intention to refuse to be bound by its solemn agreement was when its objection to the reception in evidence of what had been agreed to was lodged, after the case had been called for trial a second time in the district court and after a jury had been duly impaneled and sworn. Even then defendant's challenge was limited in effect to the competency of the stipulation as evidence, based on the theory that it had no binding force beyond the first trial. Such challenge as made in no manner invoked the discre-

tion and powers of the district court on the subject of defendant's right to withdraw from the solemn and binding judicial stipulation it had admittedly made. As disclosed by the record quoted, the defendant's objection was sustained on the sole ground that the stipulation was not binding on the second trial. In the light of the authorities hereinbefore cited, our conclusion is that the trial court thereby erred. The stipulation objected to was conclusive on the parties, at least until they were properly relieved therefrom. Further, we cannot consider defendant's objection, in fact though not in form an application for relief from the terms of its agreement. Obviously, if such trial practice, under the circumstances of this case upon the theory suggested, be countenanced, the oral statements of counsel submitted in support of, and as part of, its objection made, in so far as they related to the facts embraced in the stipulation and surrounding the making thereof, imperatively suggest the necessity of due and proper notice to plaintiff, the assumption of the burden of proof, and the according of reasonable opportunity to adduce evidence for the consideration of the court relating to the claims so made by the objector. True, solely due to the fundamental error of the trial court in denying the reception in evidence and the controlling effect of the stipulation, the introduction of parol evidence on the subject covered by that agreement was, notwithstanding the protests and exceptions thereto by plaintiff, introduced, improperly considered, and formed the only basis in the record for the order and judgment of the district court appealed from, viz., setting aside the verdict of the jury in favor of plaintiff and dismissing his action. Under the circumstances mirrored in this record, parol evidence was not admissible to contradict or qualify the formal judicial stipulation actually made.

It follows that the order and judgment appealed from are not sustained by, but are in contravention of, the competent evidence in the record; and that upon return of the verdict in the district court at the second trial the plaintiff was entitled to judgment in accordance therewith.

In view of the conclusions herein expressed, the rule of practice announced in *Netusil v. Novak,* 120 Neb. 751, and the provisions of section 20-1926, Comp. St. 1929, directing that this court, where judgment is reversed, "shall proceed to render such judgment as the court below should have rendered," etc., it is ordered that the judgment of affirmance heretofore entered in this court in this cause be rescinded and set aside; that the order and judgment of the district court appealed from be reversed; that the verdict of the jury for plaintiff in the second trial, as returned and received in the district court, be reinstated; and that judgment be entered thereon for plaintiff and against the defendant for the sum of $627, together with interest as provided by law, and for costs of suit.

REVERSED AND JUDGMENT ENTERED.