**PESSAGNO v. EUCLID INV. CO., Inc.**
**No. 7401.**

United States Court of Appeals for the
District of Columbia.

Argued Feb. 9, 1940.

Decided April 29, 1940.

Rehearing Denied June 15, 1940.

Salvatore E. Leonardo and J. Harry
Welch, both of Washington, D. C., for
appellant.

Henry I. Quinn, of Washington, D. C.,
for appellee.

Before GRONER, Chief Justice and
EDGERTON and RUTLEDGE, Associate Justices.

GRONER, C. J.

Appellant was injured by a fall on the private driveway of the apartment house at 1616, 16th Street, N. W., Washington City, and brought this action against appellee, the owner, for damages. The complaint charged negligence in failing to exercise due care to keep the pavement of the driveway in reasonably safe condition for the use of tenants and their guests. The accident happened around nine o'clock in the evening when plaintiff, the guest of a tenant, was leaving to take a cab. The day was cold and rainy, and the driveway and streets were slippery and dangerous from ice forming as the rain fell. As appellant was walking the short distance to the taxicab, in the exercise of the utmost care for her own safety, "both feet slipped out from under her", as the result of which she sustained the injury. At that time it was still raining and freezing, and she observed that there was neither sand nor ashes upon the steps or driveway.

At the close of all the evidence, appellee moved for a directed verdict, but the judge reserved his decision, and the jury found for appellant. Thereafter appellee moved the court to set aside the verdict and enter judgment in its favor in accordance with its motion, or, in the alternative, to grant a new trial. The court decided that negligence had not been proved, set aside the verdict, and entered judgment for appellee in accordance with Rule 50(b).[1]

The facts of the case raise a single question: Is a landlord, who rents apartments in his building to various tenants and reserves control of the common approaches, obligated to use reasonable care, during the progress of a storm, to remove or render harmless ice forming thereon from natural causes? The precise question appears never to have been decided in the District of Columbia, but in New York it has been held that there is no such duty.[2]

In Massachusetts and Washington State it was held that, in the absence of an express or an implied contract to do so, the owner is under no obligation to remove snow or ice forming from natural causes on a common passageway to an apartment building.[3] But in Connecticut, Colorado, and Oregon, the rule seems to be that an owner who knows or ought to know of the dangerous condition of a common passageway, caused by the accumulation of snow or ice, is bound to exercise reasonable diligence to remove the danger.[4]

Here, the learned trial judge was persuaded to enter judgment for the appellee on the authority of Kelly v. Manhattan Ry. Co., 112 N.Y. 443, 20 N.E. 383, 386, 3 L.R.A. 74. In that case the injury was sustained by a passenger descending from the station platform of an elevated street railway. The steps were slippery from an accumulation of ice caused by a storm which had been in progress most of the night. The New York court held that the failure to remove the ice during the storm or immediately after its abatement was not actionable negligence: "The defendant had furnished a covered stairway, with handrails, and pieces of rubber on each step to prevent slipping; and the failure to throw ashes or sawdust, or something of that character, upon the steps during the storm cannot be regarded as negligence, because the continuance of the storm would soon render the steps as slippery as before; and it seems to us that culpable negligence cannot be predicated upon the failure to clean off the steps between the time the storm ceased, which was between 3 and 4 o'clock in the morning, and the time when the accident happened. So brief a period as that, at such a time in the night, cannot, we think, be regarded as any evidence of a lack of that reasonable care which the defendant was bound to exercise."

The circumstances of that case were unusual. We think reliance upon it

---

[1] Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

[2] Bressler v. Rule Realty Co., 219 App. Div. 529, 220 N.Y.S. 461, affirmed 248 N.Y. 619, 162 N.E. 548. And see also Kelly v. Manhattan Ry. Co., 112 N.Y. 443, 20 N.E. 383, 3 L.R.A. 74, on which the court below relied.

[3] Bell v. Siegel, 242 Mass. 380, 136 N.E. 109, 25 A.L.R. 1261; Oerter v. Ziegler, 59 Wash. 421, 109 P. 1058.

[4] Reardon v. Shimelman, 102 Conn. 383, 128 A. 705, 39 A.L.R. 287; Robinson v. Belmont-Buckingham Holding Co., 94 Colo. 534, 31 P.2d 918; Massor v. Yates, 137 Or. 569, 3 P.2d 784. And see United Shoe Mach. Corp. v. Paine, 26 F.2d 594, 58 A.L.R. 1398, in which the Connecticut rule was approved in a New Hampshire case.

was wrong, and that the Massachusetts and New York rule overlooks the obligation of the owner of a large apartment house not only to exercise ordinary care to construct the approaches and other parts of the building under his exclusive control so that they will be reasonably safe, but likewise, after notice, to exercise ordinary care to keep them free from conditions, whether permanent or temporary, which make them dangerous to the tenants or their guests. Wardman v. Hanlon, 52 App.D.C. 14, 280 F. 988, 26 A.L.R. 1249.

██ If, therefore, appellee in the case under consideration knew or in the exercise of ordinary care ought to have known of the dangerous condition of the driveway and failed to exercise the degree of care which an ordinarily prudent person, in view of existing circumstances, would have exercised to avoid injury to a person lawfully using it in the exercise of due care for his own safety, appellant was entitled to a verdict. There was uncontradicted testimony that the superintendent of the building realized the danger to pedestrians using the entrance and had the icy places sanded on four different occasions from 6 o'clock in the morning until 5 or 5:30 o'clock in the afternoon. But at 9:30 that evening, when appellant was injured, there was no evidence of sand on the walkway. If this testimony is accepted, obviously the sand had been washed away. The question whether, in these circumstances, what was done was reasonable care was, in our opinion, a question for the jury under proper instructions from the court.[5]

In adopting this rule, we are not, as counsel say, imposing on the owner of the premises a burden physically impossible to discharge or one which makes the owner the guarantor of the safety of his tenants and their guests. We do not hold there was an absolute duty to provide a safe entrance or to keep it safe by extraordinary or unusual means. If the storm made the spreading of sand or ashes or some other preventive impossible or even useless, no reasonable person would expect it to be done, or if the spreading of sand every two or three hours might be expected to accomplish reasonable safety, what appellee did in that regard was sufficient. All that we hold is that there was a duty in the circumstances to be reasonably alert that persons lawfully using the property should be safeguarded against danger which could, in the exercise of ordinary care, be foreseen and prevented.

A more difficult question remains to be decided. Appellant, at the end of her brief, urges that the judgment was erroneous and "should be set aside *and a new trial granted*". This raises a unique question under the new rules. The court reserved its decision on appellee's motion for a directed verdict. The jury then found for appellant. Appellee renewed its motion for judgment in its favor notwithstanding the verdict "or, in the alternative, for a new trial." The grounds of the motion were: (1) that all the testimony in the case taken in the light most favorable to the plaintiff did not establish any liability on the part of the defendant; (2) the verdict was contrary to the evidence and the law; and (3) the jury was swayed by sympathy and ignored the evidence in the case. The learned trial judge was of opinion that no negligence had been proved and ordered that the verdict and judgment for plaintiff be set aside and judgment entered for the defendant as upon a verdict directed in its favor. We have, then, a case where the trial judge reserved his ruling on a motion for a directed verdict, then erroneously set aside the verdict, entered judgment for the defendant, and did not pass on the motion for new trial. Rule 50(b) provides: "Within 10 days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict * * *. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed."

██ What now to do with the case under the circumstances we have outlined, is a novel question. Presumably, if a trial court erroneously denied a motion for a directed verdict, it would be our duty to reverse and remand with instruc-

---

[5] The court's charge to the jury is not in the record, and we have no means of knowing what it contained.

tions to enter judgment for the moving party. Baltimore & Carolina Line v. Redman, 295 U.S. 654, 55 S.Ct. 890, 79 L. Ed. 1636. If, on the other hand, the court has erroneously set aside the verdict and given judgment to the moving party, it would seem proper to reverse and remand with directions to reinstate the verdict. This was done by the Court of Appeals in the Eighth Circuit in Duncan v. Montgomery Ward & Co., 108 F.2d 848, certiorari granted April 8, 1940, 60 S.Ct. 809, 84 L.Ed. —. We have examined the petition in that case, and the only question on certiorari is the disposition of the motion for new trial in the alternative. Two cases in the Second Circuit are largely similar. Hoffman v. American Mills, 288 F. 768, certiorari denied 263 U.S. 701, 44 S.Ct. 6, 68 L.Ed. 514; and Skelley v. New York, New Haven, & H. R. Co., 93 F.2d 479. In those cases the verdict for the plaintiff was reinstated.[6] Between the two cases, however, the Second Circuit had a case in which the trial judge, as is the case here, set aside the verdict and directed a verdict of his own on which he entered judgment. Clemence v. Hudson & M. Railway Co., 11 F.2d 913. Judges Hough and Hand decided that they could only reverse and remand for a new trial, and Judge Manton dissented on the ground that the reversal should direct reinstatement of the verdict. If the principle of the Clemence case applies, then the verdict here should not be reinstated and the remand should be for a new trial. But if Rule 50(b) was, as we assume, largely aimed at avoiding new trials, the Skelley case should be preferred.

What, then, happens to the motion for a new trial? The Eighth Circuit in the Duncan case held that grant-ing the motion for a directed verdict was tantamount to denying a new trial and that ended the question. But the motion was peculiarly worded, and in view of the pending certiorari, this aspect of the decision may have been wrong. There are a number of state decisions involving alternative motions for new trial. Most of them hold that the case should be remanded with instructions to the trial court to reinstate the verdict and then pass upon the motion for new trial.[7] This procedure is recommended to federal courts by the only writer who has expressed himself on the point. Simkins Federal Practice, 1938, § 702. In states where the appellate court looks at the record and itself decides whether a new trial should be granted, the statute is so framed that the appellate court is clearly given this power.[8] Without this express legislative sanction, it seems to us that, if a new trial has been prayed for in the alternative, a remand with instructions to reinstate the verdict and consider the alternative prayer affords a practical solution. A motion for directed verdict raises only the question whether reasonable men might differ on the question of negligence. Tobin v. Pennsylvania R., 69 App.D.C. 262, 100 F.2d 435. A motion for a new trial, however, may raise a myriad of other questions as to which appellant has the right to a ruling. Cf. Thompson v. Rutledge, 32 Ohio App. 537, 168 N.E. 547.

Our order, therefore, will be that the judgment entered by the lower court be reversed and the case remanded to that court with instructions to reinstate the verdict and pass upon the alternative motion for a new trial.

Reversed and remanded.

---

6 Upon reconsideration, the court found other errors in the Skelley case which required a new trial, but the record now before us presents nothing of that nature.

7 Osche v. New York Life Ins. Co., 324 Pa. 1, 187 A. 396; Altomari v. Kruger, 325 Pa. 235, 188 A. 828; Jensen v. Jensen, 228 Wis. 77, 279 N.W. 628; McLain v. Easley, 146 Wash. 377, 262 P. 975, 264 P. 714.

8 Dochtermann Van & Express Co. v. Fiss, Doerr & Carroll Horse Co., 155 App.Div. 162, 140 N.Y.S. 72; LeBarron v. Harvard, 129 Neb. 460, 262 N.W. 26, 100 A.L.R. 767.